# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| STRATIFYD, INC., AND | ) | CIVIL ACTION FILE |
| BEIJING STRATIFYD | ) | |
| TECHNOLOGY CO., LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO. |
| | ) | |
| vs. | ) | |
| | ) | |
| XIAOYU "DEREK" WANG, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Stratifyd, Inc. ("Stratifyd" or the "Company") and Beijing Stratifyd Technology Co., Ltd. ("Stratifyd China) (together, "Plaintiffs") submit this Complaint against Defendant Derek Wang ("Wang"), stating as follows.

### THE PARTIES

1.      Stratifyd is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

2.      Stratifyd China is a company organized under the People's Republic of China, with its principal place of business located at Room 1903, 16/F, Building 1, No. 8 Dongdaqiao Road, Chaoyang District, Beijing, China.  Stratifyd China is wholly owned by Stratifyd.

3.      Defendant Wang is an individual resident of the State of North Carolina who resides at 2324 Westminister Pl., Charlotte N.C.

### JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise, in part, under the Defense of Trade Secrets Act, 18 U.S.C. §

1836(c) and the Lanham Act, 15 U.S.C. § 1051 et seq. The Court also has supplemental jurisdiction of Plaintiff's other claims pursuant to 28 U.S.C. § 1367.

5. Defendant Wang is a resident of the State of North Carolina and is, therefore, subject to the personal jurisdiction of this Court. In addition, he entered into a relationship with the Company and made use of that relationship to access, and take improper and unauthorized advantage of, the Company's confidential and proprietary business information and trade secrets.

6. Upon information and belief, Wang is a United States citizen or permanent resident alien of the United States.

7. Venue is proper under 28 U.S.C. § 1391(a).

## BACKGROUND

### The Company and its Platform

8. Stratifyd, which was founded by Defendant Wang in 2015, provides an AI-powered conversational analytics platform that analyzes text for marketing and decision making research purposes which is sold as a Software-as-a-Service solution (the "Platform").

9. Clients of Plaintiffs have a wide array of mediums through which they receive feedback, insight, or commentary from their customers. These mediums include online reviews, social media channels, customer calls, and customer chats. The Platform takes this disparate data and analyzes it to provide its clients with streamlined insights into their customers' experiences. This allows Plaintiffs' clients to identify emerging customer issues, opportunities, and risks.

10. Since formation, Stratifyd has sold the Platform to over 73 customers throughout the World and has made more than $19 million in sales.

11. Stratifyd and its Platform have also received accolades such as a Bronze Stevie Award in Product of the Year category for AI/ML (artificial intelligence/machine learning) and the CATC Blue Diamond Cool Innovation Award. It was also named as a finalist in the Computing

15555329_4.docx

AI and Machine Learning Awards, and it was named the Best Retail Experience Insight Solution at the Retail Digital Transformation Summit.

12.     Stratifyd spent considerable time and money in connection with developing the Platform.  Doing so took over seven years and cost over $23 million in research and development.

13.     From its founding until March of 2022, Wang served as Stratifyd's Chief Executive Officer.  He was also a member of its Board of Directors.

14.     During his employment, Wang was a party to an employment agreement with the Company (the "Wang Employment Agreement").

15.     Since inception, the Company's business plan has included operations expansion into geographic regions all over the world, including but not limited to Europe and Asia.

16.     In order to operate in China, the Company created Stratifyd China.

17.     Stratifyd China was created on or about July 16, 2016.

18.     Stratifyd China is wholly owned by Stratifyd.

19.     Mr. Wang was also heavily involved in Stratifyd China's operations, management, and strategy.  He was designated as Stratifyd China's legal representative in China.   In that capacity, he worked closely with Catherine Guo ("Guo"), Senior Vice President of the Company's Chinese Operations.

20.     At its peak, Stratifyd China had 32 customers and 107 employees.  Beyond that, however, Stratifyd China struggled to penetrate the Chinese market.

21.     In early 2020, Wang and Guo represented that one reason why Stratifyd China was struggling to penetrate the Chinese market was because it was wholly owned by a foreign company (e.g., Stratifyd).

15555329_4.docx

22.     Wang and Guo represented that further penetration into the Chinese market required the Company to operate through a Chinese entity that would be wholly owned by Chinese nationals, either through a joint venture arrangement or otherwise.

23.     Wang and Guo presented this at a meeting of the Company's Board of Directors in January of 2020, where they "presented a proposal to create a Chinese entity proactively such that the Company is ready to entertain JV agreements with Chinese entities (the 'Subsidiary')."

24.     At that Board of Directors' meeting, the Board expressed "belie[f] that exploring the creation of the Subsidiary is in the best interest of the Company."

25.     Accordingly, the Board of Directors authorized "the investigat[ion of] the proposal for formation of the Subsidiary."

26.     While the Board's resolution authorized the Company to investigate the "proposal for formation of the Subsidiary," at no point in time did the Board ever actually approve the formation of any such subsidiary.

27.     In fact, this was the last and only time that the idea of a Chinese-owned subsidiary or JV agreement which such an entity was discussed at a board meeting.  The topic was never raised again, and it was never approved or authorized.

**Defendant Wang Surreptitiously Creates Another Entity in China**

28.     Despite the fact that the formation of a Chinese owned subsidiary or joint venture was never approved by the Company, Defendant Wang surreptitiously created such a subsidiary and hid its existence from the Company.

29.     By December of 2020, Wang had formed Beijing Dongshi Technology Co., Ltd. ("Dongshi").

30.     Upon information and belief, Dongshi is either owned by Wang solely or Wang has a majority interest in Dongshi.

15555329_4.docx

31.    Upon information and belief, Wang has, at various times, served as a member of Dongshi's board of directors.

32.    Upon information and belief, Wang has, at various times, been an officer of Dongshi.

33.    Upon information and belief, Dongshi is controlled by Wang.

**Stratifyd, with Wang's Support, Decides to Phase Out Stratifyd China's Business**

34.    Stratifyd China struggled to gain much of a foothold in China or otherwise penetrate the market there.

35.    As a result, in January of 2022, Stratifyd's Board of Directors voted to cause Stratifyd China to cease doing business.  However, because Stratifyd China had contractual obligations to customers, this decision could not be implemented immediately.

36.    Accordingly, it was resolved that where economically feasible, Stratifyd China would negotiate for early terminations with customers in exchange for negotiated settlements.  For other customers where it was not economically feasible to do so, those customer contracts would be permitted to run their course until natural expiration.  In addition, Stratifyd China would begin to implement a reduction in force ("RIF") among its staff.  This "wind down" plan was referred to internally as "Project Phoenix."

37.    As a corollary to winding down Stratifyd China's business, it was also resolved that, as a part of Project Phoenix, Stratifyd China would not sell to new customers or renew existing contracts.

38.    Project Phoenix was unanimously approved by Stratifyd's Board of Directors at a January 23, 2022 board meeting.

39.    Wang, as a member of the Company's Board of Directors, attended that meeting and voted in favor of Project Phoenix.

**Rather than Wind Down Stratifyd China, Defendant Begin to Transfer its Assets to Dongshi So That He Could Keep its Business for Himself**

40.     Almost immediately following approval of Project Phoenix, Defendant Wang began to work in secret, to transfer Stratifyd China's assets to Dongshi.

41.     Those assets included the Platform and its source code.

42.     The Platform is hosted for Stratifyd China customers at the domain www.stratifyd.cn.  When a customer accesses the domain, the domain then interfaces with the source code for the Platform which is hosted on a cloud server owned by a company called Tencent.

43.     Tencent is a well-known cloud service provider in China.  Stratifyd China pays Tencent in exchange for the right to host data, such as the Platform, on Tencent's servers.

44.     Beginning in January of 2022, Stratifyd China employees were secretly instructed by or through Defendant Wang (without Stratifyd's authorization) to make a copy of the Platform.

45.     Copying software like the Platform, which is comprised of thousands of lines of code, is not a simple task.  Thus, the first step was to determine how to copy the code, and in the Spring of 2022 Stratifyd China employees were instructed to figure out how to accomplish just that.

46.     They were also instructed not to notify or inform the Company or any US based employees what they were doing.

47.     Defendant Wang eventually determined that the copy of the Platform's source code would be made to the Tencent Cloud.  Thus, starting in March 2022, the Company's source code for the Platform was copied to a new platform hosted on Tencent Cloud (the "Copied Platform"). Stratifyd China's Tencent account was used to host the Copied Platform.

48.     The Platform is a software-as-a-service solution.  This means that it is accessible through a web browser where the customer logs in to gain access to the Platform, as opposed to

15555329_4.docx

software that is installed to computers or servers directly.

49.     For example, Stratifyd China customers have unique subdomains through which they access the Platform. A hypothetical customer named ABC Corporation would have access through abccorporation.stratifyd.cn.

50.     To create a functional working copy of the Platform, it is not enough to simply copy the source code itself. One must also create a website that the Platform will work with the copied code and allow customers to gain access.

51.     Stratifyd China has previously owned an unused domain, www.vadata.cn.

52.     In March of 2022, Defendant Wang secretly caused Stratifyd China to transfer www.vadata.cn to Dongshi.

53.      Defendant Wang then caused Stratifyd China employees to begin work on creation of websites and subdomains at www.vadata.cn that would work with the Copied Platform. This means that the Copied Platform was modified so that it would work with the www.vadata.cn domain rather than www.stratifyd.cn.

54.     Customers who previously accessed the Platform via www.stratifyd.cn would instead access the Copied Platform through www.vadata.cn.

55.     Subdomains and webpages associated with www.stratifyd.cn were copied to www.vadata.cn. This includes customer specific subdomains. If ABC Corporation was a customer of Stratifyd China and accessed the Platform through abccorporation.stratifyd.cn, then the subdomain abccorporation.vadata.cn was also created so that the customer could access the Copied Platform.

56.     The www.vadata.cn domain was restricted so that it was not accessible to individuals with IP addresses located outside of China.

57.     All of this work required significant human labor to achieve. Accordingly,

Defendant Wang enlisted Stratifyd China employees to complete this work on behalf of Dongshi. He caused Dongshi to hire former Stratifyd China employees. He also solicited current Stratifyd China employees to leave employment with Stratifyd China and work for Dongshi. And in other instances, he had Stratifyd China employees work for Dongshi simultaneously.

58. Defendant Wang approached Stratifyd China employees who were working for Dongshi and asked them to sign agreements that terminate their confidentiality obligations to Stratifyd China.

59. Those employees needed a place to work. As a result, Defendant Wang allowed some Stratifyd China employees to work for Dongshi out of Stratifyd China's office space. Eventually, Defendant Wang signed a lease for additional office space for Dongshi, but upon information and belief they paid for that lease in part with Stratifyd China funds.

60. Defendant Wang's efforts also required physical assets, such as laptops and office equipment. He simply used the assets of Stratifyd China in furtherance of his work for Dongshi.

**Defendant Wang Causes Stratifyd China to Convey Rights in the Platform to Dongshi Via an Unauthorized License Agreement**

61. All of this work served a single purpose: allowing Defendant Wang, through Dongshi, to sign or renew customers of Stratifyd China in the name of Dongshi.

62. Some customers of Stratifyd China entered into agreements with Dongshi for continuation of services that had been provided by Stratifyd China.

63. Dongshi is currently servicing multiple former clients of Stratifyd China, including Luckin, Yingtong, Pentair, Cartier, and Kimberly-Clark.

64. Dongshi is servicing these customers through the Copied Platform made available at www.vadata.cn.

65. At least one of those customers was a customer to whom Stratifyd China paid an early termination fee as part of Project Phoenix.

15555329_4.docx

66.     Defendant Wang and Dongshi did not target customers only located in China.  On at least one occasion, one of the former employees of Stratifyd China, who Defendant Wang had solicited to join Dongshi, contacted a customer of Stratifyd's in the United States in solicitation of business on behalf of Dongshi.

67.     As part of these efforts, Defendant Wang caused Stratifyd China and Dongshi to enter into an agreement entitled "Framework Cooperation Agreement."  Plaintiffs have only seen an unsigned copy of this agreement.  Defendant Wang has admitted that a copy was signed, but he has refused to provide a copy.

68.     Under the Framework Cooperation Agreement, Stratifyd China purported to "irrevocably authorize [Dongshi] to sell [Stratifyd China's] products, including the Stratifyd Intelligent Data Analysis System Platform (e.g., the Platform)" in China.

69.     It further purported to "irrevocably authorize[ Dongshi] to adjust and upgrade [Stratifyd China's] products."

70.     It further stated that Stratifyd China would supply "Dongshi with products at a selling price equivalent to 50% of the market price."

71.     Dongshi was purportedly granted authorization to determine its reselling price at its "sole discretion, provided, however, it shall not be less than RMB 50,000/copy without the special approval of [Stratifyd China]."

72.     It also purported to allow Dongshi to "use [Stratifyd China's] name and product trademarks."

73.     It also required Stratifyd China to provide Dongshi "with technical services for product adjustment and upgrading, and promotional materials of [Stratifyd China's] products."

74.     It obligated Stratifyd China to "provide full post-sale services, technical support and maintenance," despite the fact that Stratifyd China was winding down.

75. It obligated Stratifyd China to "pay [Dongshi] the profits distributed to [Dongshi] on time and in full amount."

76. It permitted Dongshi the authority to "represent itself as [Stratifyd China's] authorized agent in advertisements and letters," and to "develop sub-agents in the authorized area."

77. It allowed Dongshi to "obtain the promotional materials, sales and technical service materials of [Stratifyd China's] products for free."

78. It further provided that "[i[n the event [Dongshi] adjusts and upgrades [Stratifyd China's] products, all the new intellectual property rights derived shall be owned by [Dongshi]."

79. In sum, the Framework Cooperation Agreement purportedly conveyed significant intellectual property rights of Stratifyd China to Dongshi.

80. The Framework Cooperation Agreement was never presented to, let alone approved, by the Company or its Board of Directors.

81. Neither Stratifyd nor Stratifyd China have received any money or compensation from Dongshi.

82. Around the time that Defendant Wang began to misappropriate Stratifyd China's assets for Dongshi, he expressed a desire to resign from his position of Chief Executive Officer. Before the Company learned of Dongshi, he and the Company agreed to a Director Agreement on or about March 10, 2022, which formally terminated his employment as of that date. He remained Chairman of the Company's Board.

**Defendant Wang's Misdeeds Are Revealed to the Company and He Refuses to Cooperate**

83. In July of 2022, the existence of Dongshi and all of the foregoing conduct related to Dongshi were disclosed to the Company for the first time. Prior to that time, all of Defendant Wang's Dongshi activities had been kept secret from (and certainly never authorized by) Plaintiffs.

84. In response, Defendant Wang acknowledged that Stratifyd had more potential in

15555329_4.docx

the US and Europe than in China, thereby confirming his agreement with the purpose of Project Phoenix.  However, he attempted to spin Dongshi as innocent.

85.     He claimed that he "built BI metrics in the cosmetic industry <u>using our Stratifyd platform</u>" and that he was "very keen on white-labeling our Stratifyd platform to create a win-win solution for both of us."  Of course, this was the first time he ever disclosed this desire to use the Platform for other uses.

86.     He claimed that he was now "formally seek[ing] endorsement [for him to] continue investing time & resources into such venture; and [to] formalize a partnership/licensing agreement that grant the company (Dongshi) rights to white-label the Stratifyd platform.  In return, we will set up . . . financial terms (such as % rev share or royalty) as well if you see fit."  He claimed that he was now seeking this endorsement "to keep things transparent."

87.     Of course, he was seeking these "endorsements" long after he had already done the things he was now seeking permission to do.  By this time, Dongshi was already up and running and servicing Stratifyd China customers, employing Stratifyd China employees or former employees, and using Stratifyd China assets.  The Framework Cooperation Agreement had also already been signed.

88.     To try and hide his misdeeds, however, Defendant Wang presented it as though these things had not yet occurred and that he was seeking Company endorsement to do them in the future.

89.     The Company responded with a list of questions about the situation.  Defendant Wang refused to answer those questions, instead feigning as though the Company had endorsed Dongshi.

90.     Plaintiffs never authorized or approved any relationship with Dongshi.

91.     The Company has subsequently demanded that Defendant Wang fully disclose and

15555329_4.docx

account for the scope of his and Dongshi's activities, but he has refused.

92.     As a result, Plaintiffs brings this action to recoup their damages from Defendant Wang, enjoin him from future wrongdoing, and uncover the full extent of his and Dongshi's misdeeds.

## COUNT THREE
**(Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.)**

93.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

94.     Plaintiffs developed the Platform and its underlying source code at considerable time and expense.

95.     The Platform is sold to customers world-wide and are used and sold in interstate commerce.

96.     Plaintiffs' customers, in turn, utilize the Platform to sell goods and services worldwide and in interstate commerce.

97.     The Platform's source code is not generally known or accessible.

98.     Plaintiffs take reasonable measures to keep the Platform's source code secret. Among other things, Plaintiffs require that their employees, shareholders, and customers enter non-disclosure agreements.  The Platform's source code is stored on encrypted cloud servers that may only be access with a password and two-factor authentication.  The Platform is offered as a software-as-a-service solution, which means that its source code cannot be publicly viewed and is not otherwise available from public sources.

99.     The Platform's source code derives independent value from its secrecy.  Plaintiffs' business model requires that customers pay for access to its services, meaning that if the source code was publicly available, there would be little to no incentive for companies to pay for its services.

15555329_4.docx

100. The Platform's source code was developed over a period of seven years, at considerable cost and effort. A competitor would have extreme difficulty duplicating the efforts of Stratifyd without access to the source code.

101. The Platform's source code was disclosed or accessible by Defendant Wang only because he was employed by Stratifyd and subject to obligations to maintain the confidentiality of the source code. At the time of disclosure, Defendant Wang knew that the Platform's source code was acquired under circumstances giving rise to a duty to maintain the secrecy of the source code and/or limit the use of the source code.

102. Defendant Wang had an employment agreement and, at certain times, a Director Agreement, that obligated him to maintain the confidentiality of the Plaintiffs' Confidential Information, which included the Platform's source code.

103. Defendant Wang never had authority to license or use the Platform in connection with Dongshi.

104. Upon information and belief, Defendant Wang disclosed the Platform's source code to third parties, such as former employees of Stratifyd China.

105. Defendant Wang intentionally misappropriated the Platform's source code for his own economic benefit and with the intention and knowledge that his conduct would injure Plaintiffs.

106. Defendant Wang have engaged in misappropriation of the Platform's source code by acquiring it by improper means, including breach or inducement of a breach of a duty to maintain its secrecy.

107. Defendant Wang engaged in misappropriation of the Platform's source code by disclosing it without Plaintiffs' express or implied consent. Defendant Wang used improper means to acquire knowledge of the Platform's source code, and at the time of disclosure he knew or had

15555329_4.docx

reason to know that the Platform's source code was derived from or through a person who had used improper means to acquire it, acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; and derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.

108.    As a direct and proximate result of Defendant Wang's willful, improper, and unlawful disclosure and use of the Platform's source code, Plaintiffs have and will continue to suffer damages and irreparable injury.

109.    Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendant Wang's actual and threatened use and misappropriation of the Platform's source code should be enjoined from further disclosure or use. Defendant Wang's conduct in misappropriating the Platform's source code is willful and malicious, warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## COUNT TWO
### (Violation of State Trade Secrets Acts, e.g. N.C. Gen Stat. § 66-152 et seq.)

110.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

111.    Plaintiffs developed the Platform and its underlying source code at considerable time and expense.

112.    The Platform's source code is not generally known or accessible.

113.    Plaintiffs take reasonable measures to keep the Platform's source code secret. Among other things, Plaintiffs require that their employees, shareholders, and customers enter non-disclosure agreements. The Platform's source code is stored on encrypted cloud servers that may only be access with a password and two-factor authentication. The Platform is offered as a

15555329_4.docx

software-as-a-service solution, which means that its source code cannot be publicly viewed and is not otherwise available from public sources.

114.    The Platform's source code derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from their disclosure or use.

115.    The Platform's source code was developed over a period of seven years, at considerable cost and effort.  A competitor would have extreme difficulty duplicating the efforts of Stratifyd without access to the source code.

116.    The Platform's source code constitutes a trade secret under the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat. § 66-152 et seq.).

117.    The Platform's source code was disclosed or accessible by Defendant Wang only because he was employed by Stratifyd and subject to obligations to maintain the confidentiality of the source code.  At the time of disclosure, Defendant Wang knew that the Platform's source code was acquired under circumstances giving rise to a duty to maintain the secrecy of the source code and/or limit the use of the source code.

118.    Defendant Wang had an employment agreement and, at certain times, a Director Agreement, that obligated him to maintain the confidentiality of the Company's Confidential Information, the definition of which included the Platform's source code.

119.    Defendant Wang never had authority to license or use the Platform in connection with Dongshi.

120.    Upon information and belief, Defendant Wang disclosed the Platform's source code to third parties, such as former employees of Stratifyd China.

121.    Defendant Wang intentionally misappropriated the Platform's source code for his own economic benefit and with the intention and knowledge that his conduct would injure Plaintiffs.

122.    Defendant Wang engaged in misappropriation of the Platform's source code by acquiring, disclosing, or using the source code without the express or implied authority or consent of Plaintiffs.

123.    Defendant Wang engaged in misappropriation of the Platform's source code by disclosing it without Plaintiffs' express or implied consent.  Defendant Wang used improper means to acquire knowledge of the Platform's source code, and at the time of disclosure he knew or had reason to know that the Platform's source code was derived from or through a person who had used improper means to acquire it, acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; and derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.

124.    Defendant Wang's misappropriation and misuse of the Platform's source code is, and was, willful and malicious.

125.    As a result of Defendant Wang's misappropriation of the Platform's source code, Plaintiffs are entitled to recover from him their actual damages and any unjust enrichment obtained by Defendant Wang through his misappropriation of Plaintiffs' trade secrets.

126.    Defendant Wang's misappropriation of Plaintiffs' trade secrets was willful and malicious. As a result, Stratifyd is entitled, under N.C. Gen. Stat. § 66-154, to an award of punitive damages pursuant to N.C. Gen. Stat. § 1D-15, and to an award of its reasonable attorneys' fees.

15555329_4.docx

## COUNT THREE
### *(Breach of Employment Agreement)*

127.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

128.    In the Wang Employment Agreement, Wang agreed that he would not "directly, or indirectly, use, disclose, reverse engineer, divulge, sell, exchange, furnish, give away, transfer or otherwise reveal in any way, any Confidential Information to any person, natural or legal."  The Platform's source code constituted Confidential Information under this agreement.

129.    He further agreed that, during his employment with the Company and for a period of twelve months after termination thereof, he would refrain from "directly or indirectly, whether through or on behalf of [himself] or any other person or entity, perform the Prohibited Activities in the Territory."

130.    Prohibited Activities was defined to mean "owning, managing, operating, controlling, being employed by, serving as an officer or director of, consulting or assisting with, or participating in the ownership, management, operation or control of, any business that engages in activities that are the same as or similar to the Business of the Company."

131.    "Territory" was defined to mean "the geographic area where, in the twelve (12) months prior to the Termination Date (or within the preceding twelve (12) months if Executive is still employed with the Company), Executive (i) worked, (ii) represented the Company, or, (iii) with respect to the Company's Customers or Prospective Customers, dealt on behalf of the Company, including, without limitation: (1) the State of North Carolina, (2) each county within the State of North Carolina, (3) Mecklenburg County, North Carolina, (4) Charlotte, North Carolina, (5) London, England; (6) Beijing, China; (7) the San Francisco Bay Area; (8) Philadelphia, Pennsylvania; (9) Chicago, Illinois; (10) Atlanta, Georgia; (11) any area within 25 miles of any of the above-listed cities or geographic areas; and (12) any other city or metropolitan

15555329_4.docx

area where Executive personally conducted Company business in-person (not by telephone or internet) in the twelve (12) months prior to the Termination Date (or within the preceding twelve (12) months if Executive is still employed with the Company)."

132.     He further agreed that, during his employment with the Company and for a period of twelve months after termination thereof, he would not "directly or by assisting others, (1) solicit or attempt to solicit any business from any of the Company's Customers or Prospective Customers for purposes of selling or providing any products or services competitive with the Business of the Company; or (2) induce any of the Company's Customers or Prospective Customers to terminate their relationship with the Company or otherwise change the terms of their relationship with the Company to the detriment of the Company."

133.     He further agreed that, during his employment with the Company and for a period of twelve months after termination thereof, he would "not, directly or by assisting others, solicit, induce, or attempt to solicit or induce any such Restricted Employee to (a) terminate or reduce his or her relationship with the Company in favor of a working relationship with another entity by which Executive is employed or otherwise affiliated or (b) engage in any business that is competitive with the Business of the Company."

134.     Wang breached these obligations in the Director Agreement by, among other things, using, disclosing, selling, and transferring the Company's Platform and its source code in connection with Dongshi, managing, operating, and controlling Dongshi in the Territory, soliciting the Company's customers for Dongshi's benefit, and soliciting Company employees for Dongshi.

135.     As a result of Wang's breaches, Stratifyd suffered damage and is entitled to injunctive relief enjoining further breaches by Wang.

## COUNT FOUR
### (*Breach of Director Agreement*)

136.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

137.    In Wang's Director Agreement, Wang agreed that he would not "directly or indirectly, use, disclose, reverse engineer, divulge, sell, exchange, furnish, give away, transfer or otherwise reveal in any way, any Confidential Information to any person, natural or legal." The Platform's source code constituted Confidential Information under this agreement.

138.    He further agreed that, during his employment with the Company and for a period of twelve months after termination thereof, he would refrain from "directly or indirectly, whether through or on behalf of [himself] or any other person or entity, perform the Prohibited Activities in the Territory."

139.    Prohibited Activities was defined to mean "owning, managing, operating, controlling, being employed by, serving as an officer or director of, consulting or assisting with, or participating in the ownership, management, operation or control of, any business that engages in activities that are the same as or similar to the Business of the Company."

140.    "Territory" was defined to mean "the geographic area where, in the twelve (12) months prior to the Termination Date (or within the preceding twelve (12) months if Director is still providing services to the Company), Director (i) worked, (ii) represented the Company, or, (iii) with respect to the Company's Customers or Prospective Customers, dealt on behalf of the Company, including, without imitation: (1) the State of North Carolina, (2) each county within the State of North Carolina, (3) Mecklenburg County, North Carolina, (4) Charlotte, North Carolina, (5) London, England;(6) the San Francisco Bay Area; (7) Philadelphia, Pennsylvania; (8) Chicago, Illinois; (9) Atlanta, Georgia; (10) any area within 25 miles of any of the above-listed cities or geographic areas; and (11) any other city or metropolitan area where Director personally conducted

15555329_4.docx

Company business in-person (not by telephone or internet) in the twelve (12) months prior to the Termination Date (or within the preceding twelve (12) months if Director is still providing services to the Company)."

141. He further agreed that, during his employment with the Company and for a period of twelve months after termination thereof, he would not "directly or by assisting others, (1) solicit or attempt to solicit any business from any of the Company's Customers or Prospective Customers for purposes of selling or providing any products or services competitive with the Business of the Company; or (2) induce any of the Company's Customers or Prospective Customers to terminate their relationship with the Company or otherwise change the terms of their relationship with the Company to the detriment of the Company."

142. He further agreed that, during his employment with the Company and for a period of twelve months after termination thereof, he would "not, directly or by assisting others, solicit, induce, or attempt to solicit or induce any such Restricted Employee to (a) terminate or reduce his or her relationship with the Company in favor of a working relationship with another entity by which Director is employed or otherwise affiliated or (b) engage in any business that is competitive with the Business of the Company."

143. Wang breached these obligations in the Director Agreement by, among other things, using, disclosing, selling, and transferring the Company's Platform and its source code in connection with Dongshi, managing, operating, and controlling Dongshi in the Territory, soliciting the Company's customers for Dongshi's benefit, and soliciting Company employees for Dongshi.

144. As a result of Wang's breaches, Stratifyd has suffered damage and is entitled to injunctive relief enjoining further breaches by Wang.

## COUNT FIVE
### (*Breach of Fiduciary Duty*)

145.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

146.    Defendant Wang, as an officer and director of the Company, owed fiduciary duties to the Company and Stratifyd China, as its wholly owned subsidiary, of good faith, due care, and loyalty.

147.    Defendant Wang breached his duties by virtue of his conduct in connection with Dongshi, including but not limited to: 1) secretly forming Dongshi for his own benefit; 2) entering into the Framework Cooperation Agreement without authorization; 3) transferring Company rights to the Platform to Dongshi; 4) renewing or signing up customers of Stratifyd China in the name of Dongshi; 5) soliciting current or former employees of Stratifyd China to Dongshi; 6) misappropriating Company assets, such as laptops, office equipment, and office space, for Dongshi's benefit.

148.    Defendant Wang knowingly and recklessly, and in bad faith, violated his fiduciary duties of do care, loyalty, and good faith, and independence owed to the shareholders of the Company and has acted to put the interests of himself and/or Dongshi ahead of the interests of the Company.

149.    As a result of Defendant Wang breaches of fiduciary duties, Plaintiffs have been damaged and are entitled to recovery of those damages.

150.    As a result of Defendant Wang breaches of fiduciary duties, Plaintiffs are entitled to injunctive relief enjoining Defendant Wang from further breaches.

15555329_4.docx

## COUNT SIX
### (*Aiding and Abetting/Conspiracy to Commit Breach of Fiduciary Duty*)

151.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

152.     Third party employees of Plaintiffs, including Guo, owed fiduciary duties to Plaintiffs of good faith, due care, and loyalty.

153.     Wang was aware that these third party employees owed fiduciary duties to Plaintiffs.

154.     Those third party employees breached their fiduciary duties to the Plaintiffs by virtue of the Dongshi scheme.

155.     Defendant Wang gave substantial assistance and encouragement to those third parties in connection with those breaches.  Wang, as the Company's past CEO and Chairman of its Board of Directors, possessed a high degree of influence over the other employees.  Upon information and belief, Defendant Wang was the primary architect of the Dongi scheme described throughout this Complaint.

156.     Plaintiffs were damaged as a result of Defendant Wang's aiding and abetting and are entitled to recover compensatory damages from Defendant Wang.

157.     Plaintiffs are also entitled to injunctive relief prohibiting further inducement of breaches.

## COUNT SEVEN
### (*Tortious Interference with Contractual Relationships*)

158.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

159.     Plaintiffs have enforceable agreements with third parties, including employment agreements.

15555329_4.docx

160.     Wang was aware of these agreements.

161.     Wang intentionally and maliciously interfered with these employment agreements by improperly causing or inducing employees to breach them by working for Dongshi, soliciting Plaintiffs' customers on behalf of Dongshi, and soliciting Plaintiffs' employees on behalf of Dongshi.

162.     Wang was in a position to exercise influence over these third parties, and he did exercise such influence over her in order to induce breaches of her Employment Agreement.

163.     Plaintiffs were damaged as a result of Defendant Wang's tortious interference and are entitled to recover compensatory damages from Defendant Wang.

164.     Plaintiffs are also entitled to injunctive relief prohibiting further interference.

**COUNT EIGHT**
***(Trademark Infringement/Counterfeiting, 15 U.S.C. § 1115)***

165.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

166.     The Company owns all rights and title in the trademark STRATIFYD for use in connection with Computer software for analyzing textual data for marketing and decision making research purposes (the "STRATIFYD Mark").

167.     The STRATIFYD Mark is valid and protectable.

168.     Stratifyd obtained a registration for STRATIFYD Mark on the Principal Registrar of the United States Patent and Trademark Office, Registration No. 6,219,197, with such registration issuing on or about December 15, 2020.

169.     By virtue of Stratifyd's long and substantial uses, advertising, promotion, and consumer and marketplace recognition of the STRATIFYD Mark for many years, the STRATIFYD Mark is distinctive, has garnered substantial goodwill and reputation associated

15555329_4.docx

exclusively with Stratifyd and its services such as the Platform, and it is entitled to protection against likely confusion, deception, or mistake.

170.    Stratifyd China, as a wholly owned subsidiary of Stratifyd, is authorized to make use of the STRATIFYD Mark.

171.    In connection with his Dongshi scheme, Defendant Wang, either individually and/or through Dongshi, purported to allow Dongshi to make use of the STRATIFYD Mark.

172.    In particular, the Framework Cooperation Agreement purportedly authorized Donghi to "use [Stratifyd China's] name and product trademarks," which would have naturally included the STRATIFYD Mark.

173.    Upon information and belief, Dongshi has been making use of the STRATIFYD Mark in connection with the sale, offering for sale, distribution, and advertising of the Copied Platform.

174.    The Company, and true owner of the STRATIFYD Mark, never authorized such use.

175.    Defendant Wang controls Dongshi, and directly took part in such infringement.

176.    The use of the STRATIFYD Mark by Dongshi and Defendant Wang is likely to cause confusion, to cause mistake, or to deceive, as to the source, affiliation, connection, or sponsorship of Dongshi's Copied Platform.

177.    Defendant Wang's conduct is willful, deliberate, in bad faith, and undertaken with knowledge of Stratifyd's rights, and with full knowledge that Defendant Wang and Dongshi have no right, license, or authority to use the STRATIFYD Mark or any confusingly similar variant thereof.

178.    Defendant Wang's aforementioned acts constitute willful violation of Stratifyd's rights in violation of the Lanham Act, Section 32, 15 U.S.C. § 1114.

179.     Stratifyd has been and will continue to be harmed by Defendant Wang's wrongful conduct.

180.     Defendant Wang has caused, and unless restrained by the Court under 15 U.S.C. § 1116 will continue to cause, serious irreparable injury and damage to Stratifyd and to the goodwill associated with the Stratifyd brand, including the STRATIFYD Mark.  This harm constitutes an injury for which Stratifyd has no adequate remedy at law.

181.     As the direct and proximate result of Defendant Wang's deliberate and intentional infringement, Defendant Wang has been unjustly enriched while Stratifyd continues to suffer injury in an amount not yet ascertained.

**COUNT NINE**
***(Unfair Competition, False Designation of Origin, and False and/or Misleading Advertising,
15 U.S.C. § 1125(a))***

182.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

183.     The STRATIFYD Mark is valid and protectable.

184.     Stratifyd obtained a registration for STRATIFYD Mark on the Principal Registrar of the United States Patent and Trademark Office, Registration No. 6,219,197, with such registration issuing on or about December 15, 2020.

185.     By virtue of Stratifyd's long and substantial uses, advertising, promotion, and consumer and marketplace recognition of the STRATIFYD Mark for many years, the STRATIFYD Mark is distinctive, has garnered substantial goodwill and reputation associated exclusively with Stratifyd and its services such as the Platform, and it is entitled to protection against likely confusion, deception, or mistake.

186.     In connection with his Dongshi scheme, Defendant Wang, either individually and/or through Dongshi, purported to allow Dongshi to make use of the STRATIFYD Mark.

187. In particular, the Framework Cooperation Agreement purportedly authorized Donghi to "use [Stratifyd China's] name and product trademarks," which would have naturally included the STRATIFYD Mark.

188. Upon information and belief, Dongshi has been making use of the STRATIFYD Mark in connection with the sale, offering for sale, distribution, and advertising of the Copied Platform.

189. The Company, and true owner of the STRATIFYD Mark, never authorized such use.

190. Defendant Wang controls Dongshi, and directly took part in such infringement.

191. The use of the STRATIFYD Mark by Dongshi and Defendant Wang is likely to cause confusion, to cause mistake, or to deceive, as to the source, affiliation, connection, or sponsorship of Dongshi's Copied Platform.

192. Defendant Wang's conduct is willful, deliberate, in bad faith, and undertaken with knowledge of Stratifyd's rights, and with full knowledge that Defendant Wang and Dongshi have no right, license, or authority to use the STRATIFYD Mark or any confusingly similar variant thereof.

193. Defendant Wang's unauthorized and wrongful conduct in connection with misusing the STRATIFYD Mark is likely to cause confusion, mistake, and/or deception among the consuming public as to the sponsorship, affiliation, connection, or association of Defendant Wang or his commercial activities with Stratifyd and its commercial activities, and/or as to the source, origin, sponsorship, or approval of Defendant Wang's or Dongshi's goods or services or commercial activities by Stratifyd.

194. Defendant Wang's aforementioned acts constitute willful violation of the Lanham Act, Section 43(a), 15 U.S.C. § 1117.

195. Defendant Wang's use of the STRATIFYD Mark also constitutes counterfeiting under the Lanham Act, e.g. 15 U.S.C. § 1114 and 1117, thereby entitling Stratifyd to treble and statutory damages under 15 U.S.C. § 1117.

196. Stratifyd has been and will continue to be harmed by Defendant Wang's wrongful conduct.

197. By such wrongful acts, Defendant Wang has caused, and unless restrained by the Court under 15 U.S.C. § 1116 will continue to cause, serious irreparable injury and damage to Stratifyd and to the goodwill associated with the STRATIFYD Mark. This harm constitutes an injury for which Stratifyd has no adequate remedy at law

198. As the direct and proximate result of Defendant Wang's deliberate and intentional infringement, Defendant Wang has been unjustly enriched while Stratifyd continues to suffer injury in an amount not yet ascertained.

## COUNT TEN
### (Contributory Trademark Infringement)

199. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

200. The Company owns all rights and title in the STRATIFYD Mark for use in connection with Computer software for analyzing textual data for marketing and decision making research purposes.

201. The STRATIFYD Mark is valid and protectable.

202. Stratifyd obtained a registration for STRATIFYD Mark on the Principal Registrar of the United States Patent and Trademark Office, Registration No. 6,219,197, with such registration issuing on or about December 15, 2020.

203. By virtue of Stratifyd's long and substantial uses, advertising, promotion, and consumer and marketplace recognition of the STRATIFYD Mark for many years, the

15555329_4.docx

STRATIFYD Mark is distinctive, has garnered substantial goodwill and reputation associated exclusively with Stratifyd and its services such as the Platform, and it is entitled to protection against likely confusion, deception, or mistake.

204.    In connection with his Dongshi scheme, Dongshi made use of the STRATIFYD Mark without Stratifyd's authorization, consent, or approval.

205.    The use of the STRATIFYD Mark by Dongshi is likely to cause confusion, to cause mistake, or to deceive, as to the source, affiliation, connection, or sponsorship of Dongshi's Copied Platform.

206.    Defendant Wang controls Dongshi and caused it to make such unauthorized use of the STRATIFYD Mark, which in turn damaged Stratifyd.  Accordingly, Defendant Wang is liable for contributory/vicarious trademark infringement for all infringement committed by Dongshi.

**COUNT ELEVEN**
***(Defendant's Unfair & Deceptive Trade Practices in violation of N.C. Gen .Stat § 75)***

207.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

208.    Defendant Wang's acts constitute unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1.0

209.    Defendant Wang's acts were in and affecting commerce.

210.    Defendant Wang's acts have proximately caused damages to Plaintiffs in an amount in excess of $25,000 to be proven at trial. Plaintiffs are entitled to recover treble damages and its reasonable attorneys' fees for Defendant Wang's unfair or deceptive practices, pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1.

15555329_4.docx

## COUNT TWELVE
### *(Common-law Unfair Competition & Palming off Stratifyd's Goods and Property)*

211.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

212.    Through its expenditure of considerable time, money and labor in researching, designing, and developing the Platform, and in establishing relationships with customers worldwide, Plaintiffs have earned a commercial advantage in the marketplace.

213.    At all relevant times, Defendant Wang was aware of Plaintiffs' successful product design, sales and marketing strategies, development capabilities, the nature of Plaintiffs' relationships with its customers, and the proprietary information and trade secrets Plaintiffs have amassed as part of their development and sales efforts.

214.    Defendant Wang and Dongshi would not have been able to develop the Copied Platform so quickly but for their individual access to, and misuse of, Plaintiffs' proprietary information and trade secrets, and those Defendant Wang's improper sharing of that information with Dongshi, thus allowing Defendant Wang (through Donsghi) to unfairly compete for Plaintiffs' business.

215.    Defendant Wang also unfairly competed against Plaintiffs by palming or passing off Plaintiffs' valuable property as if that valuable property belonged to Dongshi. In doing so,

Defendant Wang unfairly and unlawfully took advantage of, and traded on, Plaintiffs' reputation and good will.

216.    As a direct and proximate result of Defendant Wang's acts of unfair competition, Plaintiffs' have been damaged in an amount to be proven at trial.

## COUNT THIRTEEN
### (*Conversion*)

217.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

218.    Plaintiffs are the rightful owner of certain property such as laptops, office equipment, and other physical goods.

219.    Defendant Wang exercised wrongful possession or dominion over that property. Plaintiffs demanded its return, but Defendant Wang refused.

220.    As a result, Plaintiffs have suffered damages in an amount to be proven at trial.

## COUNT FOURTEEN
### (*Copyright Infringement Under Chinese Law*
### *In the alternative to U.S. Copyright Infringement)[1]*

221.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

222.    Plaintiffs own a valid copyright in the source code of the Platform and Stratifyd China's website  under the Copyright Law of the People's Republic of China ("PRC Copyright Law").

223.    Defendant Wang, directly or indirectly through Dongshi or third parties, copied, displayed, distributed, altered, and adapted the source code of the Platform and Stratifyd China's

---

[1] Stratifyd intends to bring a claim against Defendant Wang for infringement of copyright under the United States copyright act, 17 U.S.C. § 101 et seq., for infringement of the Platform's source code.  However, in order to do so, the Copyright Act, as construed by the United States' Supreme Court, requires that it first obtain a copyright registration from the United States Copyright Office.

15555329_4.docx

website without Plaintiffs' authorization in violation of Plaintiffs' rights of publication, attribution, alteration, integrity, reproduction, distribution, leasing, adaptation, and compilation of Article 10 of the PRC Copyright Law.

224. Plaintiffs have been damaged and are entitled to compensation from Defendant Wang under Article 48 and 49 of the PRC Copyright Law.

225. As a result, Plaintiffs have suffered damages in an amount to be proven at trial.

226. Pursuant to Fed. R. Civ. P. 44.1, Plaintiffs hereby give notice that they assert this claim under PRC Copyright Law.

## COUNT FOURTEEN
### *(Contributory Copyright Infringement Under Chinese Law)*

227. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

228. Plaintiffs owns a valid copyright in the source code of the Platform and Stratifyd China's website under the PRC Copyright Law.

229. Third parties such as Dongshi and its employees or agents, displayed, distributed, altered, and adapted source code of the Platform and Stratifyd China's website without Plaintiffs' authorization in violation of Plaintiffs' rights of publication, attribution, alteration, integrity, reproduction, distribution, leasing, adaptation, and compilation of Article 10 of the PRC Copyright Law.

230. Plaintiffs have been damaged and are entitled to compensation from Defendant Wang under Article 48 and 49 of the PRC Copyright Law.

---

Stratifyd is presently working to obtain that registration. Once obtained, it will seek leave to amend to add a claim for copyright infringement and contributory copyright infringement, and hereby reserves all rights related to same.

15555329_4.docx

231.     Defendant Wang, through his ownership and/or control of Dongshi, intentionally induced those third parties to commit infringement.

232.     Upon information and belief, Defendant Wang directed those infringement efforts knowing that he were doing so without the consent or authorization of the copyright owner, Stratifyd.

233.     As a result, Plaintiffs have suffered damages in an amount to be proven at trial.

234.     Pursuant to Fed. R. Civ. P. 44.1, Plaintiffs hereby give notice that they assert this claim under PRC Copyright Law.

## COUNT FIFTEEN
### (*Unjust Enrichment*)

235.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

236.     Defendant Wang benefited from his wrongful and unlawful actions in that, among other things, he wrongfully procured certain business opportunities from Plaintiffs for his own benefit through Dongshi.

237.     Upon information and belief, Dongshi has received revenues from former customers of Stratifyd China.

238.     Defendant Wang went so far as to sell the Copied Platform to former customers of Stratifyd China whom Stratifyd China had paid termination fees to.

239.     In furtherance of these efforts, Defendant Wang misappropriated Plaintiffs' assets, including their trade secret and proprietary information, copyrighted Platform, domains, employees, office space, office equipment, and customer relationships.

240.     By virtue of his ownership and control of Dongshi, Defendant Wang have been unjustly enriched thereby.

15555329_4.docx

241.    Plaintiffs are entitled to return of Defendant Wang's unjust enrichment in an amount to be proven at trial.

## COUNT SIXTEEN
### *(Disgorgement of Improperly Obtained Profits)*

242.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 - 92 as if fully restated herein.

243.    Defendant Wang engaged in a conspiracy designed to divert sales from Stratifyd China to Dongshi, which he owns and controls.

244.    In furtherance of this conspiracy, Defendant Wang misappropriated Plaintiffs' assets, including their trade secret and proprietary information, copyrighted Platform, domains, employees, office space, office equipment, and customer relationships.

245.    Plaintiffs are the rightful owner of the profits Defendant Wang wrongfully realized as a result of his coordinated and unfair dealings and breaches of contract and trust.

246.    In equity and good conscience, because of his wrongful and unlawful conduct, Defendant Wang should each be compelled to disgorge to Plaintiffs all such improperly obtained profits, plus interest or investment gained thereon. Alternatively, the Court should impose a constructive or resulting trust on and over all such profits Defendant Wang unlawfully secured at Plaintiffs' expense.

## JURY DEMAND

Plaintiffs, pursuant to Fed. R. Civ. P. 38(b), demands a trial by jury in this action on all issues so triable.

WHEREFORE, Plaintiffs respectfully pray that the Court:

1.    Award them compensatory damages in an amount in an amount to be proven at trial from Defendant Wang;

15555329_4.docx

2.     Award them punitive damages in an amount to be proven at trial from Defendant Wang;

3.     Order Defendant Wang to disgorge to Plaintiffs all profits he derived through his breaches of contract, fiduciary duties, his unauthorized use of Plaintiffs' Platform, trade secrets, propriety information, assets and employees, or his unlawful or unfair competition;

4.     Treble the compensatory damages awarded Plaintiffs in this action pursuant to N.C. Gen. Stat. § 75-16 and 15 U.S.C. § 1117;

5.     Award them statutory damages pursuant to 15 U.S.C. § 1117;

6.     Award them its attorneys' fees and expenses of litigation pursuant to pursuant to N.C. Gen. Stat. § 75-16.1, 15 U.S.C. § 1117, and 18 U.S.C. § 1836.

7.     Award Plaintiffs such pre-judgment and post-judgment interest as it is entitled to by law;

8.     Preliminarily and permanently enjoin Defendant Wang from further breaches of contract, fiduciary duty, trade secret misappropriation, trademark infringement, counterfeiting, unfair competition, passing off, tortuously interfering with Plaintiffs' contractual rights, copyright infringement, misappropriation/misuse of assets, and all other wrongful acts complained of herein;

9.     Order that all of Defendant Wang's trade secrets, proprietary information, infringing, and misleading and deceptive materials in Defendant Wang's possession, custody, or control be removed and destroyed;

10.    Award Plaintiffs an accounting of all amounts Defendant Wang has been paid by or through Dongshi;

11.    Grant Plaintiffs such other and further relief as the Court deems just and proper.

This the 22nd day of December, 2022.

Respectfully submitted,

**MORRIS, MANNING & MARTIN, LLP**

_/s/Daniel Huynh_____
Daniel Huynh
NC Bar No. 40259
dhuynh@mmmlaw.com
Stephen M. Vaughn (_pro hac vice
application forthcoming_)
GA Bar No. 219482
svaughn@mmmlaw.com
K. Tate Gray (_pro hac vice application
forthcoming_)
Georgia Bar No. 919123
tgray@mmmlaw.com
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
Ph: (404) 233-7000
Fax: (404) 365-9532

15555329_4.docx