UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00683-RJC-DCK

| | |
|---|---|
| STRATIFYD, INC., and BEIJING ) <br> STRATIFYD TECHNOLOGY CO., LTD., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> XIAOYU "DEREK" WANG, ) <br> ) <br> Defendant. ) <br> ) | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 16).

## I.  BACKGROUND

The following facts, alleged in Plaintiffs' complaint, are taken as true for the purpose of Defendant's Motion to Dismiss:

This action arises from a dispute between Defendant Derek Wang and Plaintiffs, Stratifyd and Stratifyd China. In 2015, Defendant founded Stratifyd, a company which sells a Software-as-a-Service solution platform that analyzes text for marketing and decision-making research purposes, using AI-powered conversational analytics. (Doc. No. 1 at 2). Clients of Stratifyd use the company's software platform to analyze data from consumer feedback and provide insights on customer experiences. (*Id.*).

Defendant initially served as Stratifyd's Chief Executive Officer and as a member of Stratifyd's Board of Directors. (*Id.* at 3). In this role, Defendant was a party to an employment agreement. (*Id.*).

1

From the beginning, Stratifyd planned to expand world-wide. (*Id.*). To achieve the goal of expansion into China, Stratified created Stratifyd China, a wholly owned subsidiary, in July 2016. (*Id.*). Defendant worked extensively in the operations, management, and strategy of Stratifyd China, including serving as Stratifyd China's legal representative in China. (*Id.*). In this role, Defendant worked closely with Catherine Guo who served as Senior Vice President of Chinese Operations. (*Id.*).

Stratifyd China boasted 32 customers and 107 employees at its peak, however, the company struggled to gain ground in the Chinese market. (*Id.*). Both Defendant and Guo believed this failure could be attributed to Stratifyd China's status as a foreign-owned company. (*Id.*). In January 2020, Defendant and Guo explained their belief that a Chinese entity, wholly owned by Chinese nationals, was the key to further penetration of the Chinese market, and they presented a proposal to Stratifyd's Board of Directors to create a Chinese company proactively so that it could enter potential joint ventures with Chinese entities. (*Id.* at 4). The Board displayed support for the idea and expressed that they felt that exploring the creation of a subsidiary was in the best interest of Stratifyd. (*Id.*). Additionally, the Board authorized the company to investigate how the company would go about implementing Defendant and Guo's proposal, but the Board did not give approval for the formation of a Chinese-owned subsidiary. (*Id.*).

After that meeting, Defendant surreptitiously created a Chinese-owned entity, Beijing Dongshi Technology Co., Ltd. (Dongshi), and concealed its existence from Stratifyd. (*Id.*). Defendant either solely owns or has a majority interest in Dongshi and has served on its Board of Directors and as an officer. (*Id.*).

In January 2022, due to Stratifyd China's inability to gain ground in China's market, the Board of Director's voted for Stratifyd China to cease doing business. (*Id.* at 5). Several contractual

obligations remained for Stratifyd China, so the decision could not be immediately undertaken. (*Id.*). To this end, the Board decided Stratifyd China would negotiate for early terminations in exchange for settlements with some customers while it would allow other contracts to run until natural expiration. (*Id.*). Accordingly, the Board approved and commenced Project Phoenix, a plan to wind down Stratifyd China, which included reducing its staff. (*Id.*). Pursuant to the plan, Stratifyd China would neither sell to new clients nor renew existing contracts. (*Id.*). As a member of the Board, Defendant attended the meeting and voted in favor of Project Phoenix. (*Id.*).

After voting to approve Project Phoenix, Defendant immediately began to secretly transfer Stratifyd China's assets to Dongshi, including the source code for the Stratifyd entities' Software-as-a-service platform. (*Id.* at 6). Further, Defendant secretly instructed Stratifyd China's employees to make a copy of the Platform and specifically instructed employees to refrain from notifying or informing Stratifyd or any of its US based employees. (*Id.*).

In March 2022, Defendant uploaded the Stratifyd entities' copied source code to a new platform on a cloud server to allow it to be accessed and used via a domain other than the Stratifyd China domain. (*Id.*). Stratifyd China previously owned the domain, www.vadata.cn, which Defendant secretly transferred from Stratifyd China to Dongshi. (*Id.* at 7). Customers would now access the platform, which was previously offered by Stratified China, by going to the new domain from Dongshi. (*Id.*). The new domain was restricted such that it was not accessible to individuals with IP addresses located outside of China. (*Id.*). The Stratifyd entities contend that this effort to copy the source code and make it usable at the new domain was a labor-intensive project, which Defendant utilized Stratifyd China's employees to achieve. (*Id.* 7–8).

During this time, Defendant enlisted Stratifyd China employees to complete work for Dongshi, caused Stratifyd China employees to be hired to work for Dongshi, and had employees

3

work simultaneously for Stratifyd China and Dongshi. (*Id.* at 8). In pursuit of these ends, Defendant asked Stratifyd China employees to sign agreements which terminated their confidentiality agreements to Stratifyd China and allowed employees to do work for Dongshi in Stratifyd China's office space. (*Id.*). Additionally, Defendant acquired office space for Dongshi, using Stratifyd China's funds to pay for the space. (*Id.*). Along the way, Defendant also used laptops and office equipment to accomplish his work for Dongshi. (*Id.*).

Some of Stratifyd China's customers entered into agreements with Dongshi for continuation of services previously provided by Stratifyd China. (*Id.*). Former clients, including Luckin, Yingtong, Pentair, Cartier, and Kimberly-Clark, are currently customers of Dongshi and are receiving services using the copied platform through the domain, www.vadata.cn. (*Id.*). Of the former customers of Stratifyd China who now conduct business with Dongshi, at least one paid an early termination fee as part of Project Phoenix. (*Id.*). Beyond China, former employees of Stratifyd China reached out to a customer of Stratifyd in the United States to do business with Dongshi. (*Id.* at 9).

Defendant also caused Stratifyd China and Dongshi to enter into an agreement called "Framework Cooperation Agreement," which Stratifyd has not seen, and Defendant refuses to provide a copy. (*Id.*). This agreement authorized Dongshi to sell Stratifyd's products; specifically, it allowed Dongshi to use and modify Stratifyd's platform, selling to Dongshi at 50% of the market price. (*Id.*). Along with conveying the right to use the platform, the agreement also allowed Dongshi to set the price for the products at its sole discretion, without the approval of Stratifyd China, so long as the price remained above RMB 50,000 per copy and to use Stratifyd China's name and trademarks. (*Id.*). In addition, the agreement required Stratifyd China to provide Dongshi with technical services and promotional materials and obligated Stratifyd China to provide post-

sale services and technical support to Dongshi. (*Id.*). Further, Dongshi received authorization to represent itself as Stratifyd China's authorized agent in advertisement and letters and to obtain promotional, sales, and technical service materials from Stratifyd China for free. (*Id.* at 10). The agreement also declared that any adjustments and upgrades by Dongshi upon Stratifyd China's products would become the intellectual property of Dongshi. (*Id.*). This agreement was never accepted or presented to the Stratifyd or its Board of Directors, and the company never received compensation from Dongshi. (*Id.*).

Eventually, Defendant sought to resign from his role as Chief Executive Officer of Stratifyd. (*Id.*). In March 2022, Defendant and Stratifyd entered into a Director Agreement. (*Id.*). At that point, Defendant's employment with the Stratifyd entities was terminated, but he remained Chairman of Stratifyd's Board of Directors. *Id.* Stratifyd knew nothing of the existence of Dongshi. (*Id.*).

In July 2022, Stratifyd became aware of the existence of Dongshi and Defendant's purported involvement with its formation as detailed above. (*Id.*). According to Stratifyd, Defendant claimed that the creation and use of Dongshi were innocent and that he sought to receive endorsement from Stratifyd for the sake of transparency. (*Id.* at 11). However, by this point, Dongshi had been running for some time and had been serving customers. (*Id.*). Stratifyd sent Defendant questions, which he refused to answer. (*Id.*). Stratifyd asserts that it never authorized or approved a relationship with Dongshi. (*Id.*).

On December 22, 2022, Plaintiffs filed a complaint alleging various claims, including separate claims for unjust enrichment and disgorgement. (Doc. No. 1). On February 13, 2023, Defendant filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims for unjust enrichment and disgorgement. (Doc. No. 16).

5

In essence, Plaintiffs contend Defendant procured business opportunities from Stratifyd China for his own benefit through Dongshi and that Dongshi has received revenue from former customers of Stratifyd China. (Doc. No. 1 at 32). Further, Plaintiffs allege that Dongshi sold platform access to customers of Stratifyd China who had been paid termination fees by Stratifyd China. *Id.* Plaintiffs claim Defendant used Plaintiffs' assets, including trade secret and proprietary information, the copyrighted platform, domains, employees, office space, office equipment, and customer relationships. *Id.* To support its claim for disgorgement, Plaintiffs further allege that Defendant conspired to divert sales from Stratifyd China to Dongshi. *Id.* at 33.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) 'challenges the legal sufficiency of a complaint,' including whether it meets the pleading standard of Rule 8(a)(2)." *Fed. Nat'l Mortg. Ass'n v. Quicksilver LLC*, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). A claim challenged under Rule 12(b)(6) will survive if it contains enough factual matter "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). An allegation is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Further, while the facts pleaded must be taken as true, the legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments need not be taken as true. *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).

6

### III. DISCUSSION

**A. Defendant's Motion to Dismiss Count 15 of Plaintiffs' complaint for unjust enrichment is denied.**

Defendant challenges Plaintiffs' claim of unjust enrichment under Rule 12(b)(6) of the Federal Rules of Civil Procedure. He argues that Stratifyd fails to allege a claim for unjust enrichment because the claim lacks any assertion that Stratifyd conferred a benefit on Defendant. (Doc. No. 16-1) Instead, Defendant argues that the claim only asserts that Defendant benefited from his own actions. (Doc. No. 16-1). In support of their claim for unjust enrichment, Plaintiffs allege that Defendant "benefited from his wrongful and unlawful actions" by procuring business opportunities from Plaintiff for his own benefit and that he misappropriated assets such as intellectual property, office space, and customer relationships for his own benefit. (Doc. No. 1). Plaintiffs argue that their "action is premised on that fact that [Defendant] abused and misused the benefits conferred by Plaintiffs for his own selfish purposes" and that Plaintiffs' giving Defendant access to their intellectual property is sufficient to confer a benefit to Defendant, thus supporting a claim for unjust enrichment. (Doc. No. 18).

To establish a claim for unjust enrichment under North Carolina law, a plaintiff must plead five elements: first, that one party conferred a benefit upon the other party; second, that the benefit was not conferred officiously, in other words "it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances;" third, that the benefit was not gratuitous; fourth, that the benefit was measurable; and fifth, that "the defendant consciously accepted the benefit." *JPMorgan Chase Bank, National Ass'n v. Browning*, 230 N.C. App. 537, 542, 750 S.E.2d 555, 560 (2013) (first citing *D.W.H. Painting Co., Inc. v. D.W. Ward Const. Co., Inc.*, 174 N.C. App. 327, 334, 620 S.E.2d 887, 893 (2005); and then quoting *Booe v.*

7

*Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)); *see also Mode v. S-L Distribution Company, LLC*, No. 3:18-cv-00150-RJC-DSC, 2019 WL 1057045, at *8 (W.D.N.C. Mar. 6, 2019).

"The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761, *aff'd*, 312 N.C. 324, 321 S.E.2d 892 (1984) (citing *Wright v. Wright,* 305 N.C. 345, 289 S.E.2d 347 (1982)). A claim for unjust enrichment requires more than the mere showing "that one party voluntarily benefited another or his property." *Id.* (citation omitted). "In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received, but that the defendant has failed to make restitution for the property or benefits." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417, 537 S.E.2d 248, 266 (2000) (citing *Adams v. Moore,* 96 N.C. App. 359, 362, 385 S.E.2d 799, 801 (1989), *disc. review denied,* 326 N.C. 46, 389 S.E.2d 83 (1990)).

The North Carolina Court of Appeals has found that a claim for unjust enrichment is properly stated where a plaintiff pleads that benefits have been diverted from a business to a defendant. For example, in *Norman v. Nash Johnson & Sons' Farms, Inc.*, the North Carolina Court of Appeals found that an unjust enrichment claim was sufficiently pled where the plaintiffs alleged "defendants breached their fiduciary duties and received benefits for which they have not paid, thereby injuring the Company and depriving it of such benefits." 140 N.C. App. at 417, 537 S.E.2d at 266.

Further, the North Carolina Business Court has allowed a claim for unjust enrichment to survive where an individual used her position within a company to cause the company to confer a benefit upon herself and others. In *Bandy v. A Perfect Fit for You, Inc.*, No. 16 CVS 456, 2018 WL 1187991, at *5 (N.C. Super. Mar. 7, 2018), the defendant used her position as sole director of an entity to engage in "self-dealing transactions to transfer money from [the entity] to herself" and to the other defendants. Analyzing the claim for unjust enrichment, the Business Court concluded that a claim for unjust enrichment had been successfully pleaded on allegations that the entity had conferred benefits on the defendants "by transferring [the entity's] assets" to the defendant. *Bandy*, 2018 WL 1187991, at *5–6. Thus, the fact that a defendant caused the entity to confer the benefit on herself will not prevent the first element of unjust enrichment from being sufficiently pled.

Here, plaintiffs alleged that Defendant "benefited from his wrongful and unlawful actions in that . . . he wrongfully procured certain business opportunities from Plaintiffs for his own benefit through Dongshi." (Doc. No. 1 at 32). These allegations bear striking similarities to *Norman*, in which the North Carolina Court of Appeals found plaintiffs properly stated a claim for unjust enrichment where plaintiffs alleged that defendants, through their own wrongful conduct, "received benefits for which they have not paid, . . . depriving [the company] of such benefits." 140 N.C. App. at 417, 537 S.E.2d at 266. Plaintiffs here also allege that Defendant, through Dongshi, received revenues from former Stratifyd China customers and that Defendant misappropriated numerous assets of Plaintiffs, including trade secrets and proprietary information, the copyrighted platform, domains, employees, office space, office equipment, and customer relationships. (Doc. No. 1 at 32).

Defendant takes issue with Plaintiffs' pleading, noting that Plaintiffs "do[ ] not allege that [Stratifyd] conferred any benefit upon [Defendant,]" but rather Defendant "wrongfully benefited

9

from his own actions." (Doc. No. 16-1 at 4). Thus, Defendant contends that the first element of unjust enrichment, that one party conferred a benefit upon the other party, is not met. The Court finds Defendant's argument unavailing because it overlooks the allegations throughout Plaintiff's complaint that Stratifyd transferred assets, including domains and intellectual property, to Defendant's entity, Dongshi. To be sure, the allegations display that Defendant himself caused the entity to divert the assets in order to confer a benefit upon Dongshi, and thus himself; however, those assets, as alleged in the complaint, belonged to Plaintiffs, and it was by his role within the entities that he caused the entities to confer the benefit. In short, Defendant's argument fails to appreciate Plaintiffs' allegations that Defendant, through his position, caused Stratifyd's entities to confer a benefit upon Dongshi, like the defendant in *Bandy*. (Doc. No. 1). Defendant's role in Plaintiffs' conferring the benefit will not defeat a claim for unjust enrichment at this stage.

As noted above, the Court must take Plaintiffs' allegations as true for the purpose of a motion to dismiss. Taking the facts alleged as true, this Court finds that Plaintiffs' have stated a claim for unjust enrichment, and Defendant's Motion to Dismiss is therefore denied as to that claim.

**B. Defendant's Motion to Dismiss Count 16 of Plaintiff's complaint for disgorgement is granted.**

Defendant challenges Plaintiffs' claim for disgorgement under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that disgorgement is a remedy rather than a cause of action, and thus, Plaintiffs' disgorgement claim should be dismissed. (Doc. No. 16-1 at 4). In opposition, Plaintiffs assert that Defendant "engaged in a conspiracy designed to divert sales from Stratifyd China to Dongshi" and profited from the wrongful and unlawful conduct, and thus should be "compelled to disgorge to Plaintiffs all such improperly obtained profits, plus interest or investment gained thereon." (Doc. No. 1 at 33). Additionally, plaintiffs contend that however

10

disgorgement is characterized, it is an appropriate remedy recognized by North Carolina courts and that they have sufficiently pled that they are entitled to disgorgement here. (Doc. No. 18 at 5).

"Disgorgement of profits is relief in the nature of restitution." *SAS Inst., Inc. v. World Programming Ltd.*, No. 5:10-CV-25-FL, 2015 WL 5227801, at *1 (E.D.N.C. Sept. 8, 2015) (citing Restatement (Third) of Restitution and Unjust Enrichment § 51). The North Carolina Business Court has held that "[d]isgorgement is a remedy, not a cause of action." *Se. Anesthesiology Consultants, PLLC v. Rose*, No. 17 CVS 9002, 2019 WL 5090364, at *7 (N.C. Super. Oct. 10, 2019) (citing *Glob. Textile All., Inc. v. TDI Worldwide, LLC*, No. 17 CVS 7304, 2018 WL 6272929, at *13 (N.C. Super. Ct. Nov. 29, 2018).

When a plaintiff pleads a remedy rather than a recognized cause of action, that claim is properly dismissed for failure to state a claim. *Holland v. Wells Fargo Home Mortg.*, No. 5:14-CV-00176-MOC, 2015 WL 1432458, at *5 (W.D.N.C. Feb. 13, 2015) ("As a remedy is not a cause of action, plaintiffs do not state a claim."); *see also Patterson v. Flagstar Bank, FSB*, No. 3:12-CV-00707-MOC, 2013 WL 5217616, at *9 (W.D.N.C. Sept. 17, 2013) ("As punitive damages are a remedy and not a cause of action, such claim will be dismissed for failure to state a cause of action."). "However, the complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Jennings v. Univ. of N. Carolina at Chapel Hill*, 240 F. Supp. 2d 492, 512 (M.D.N.C. 2002) (cleaned up) (first quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990); and then citing *Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974)); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. April 2023 update).

Here, Plaintiffs have attempted to plead disgorgement as a cause of action and separately,

in their prayer for relief, sought disgorgement as a remedy. (Doc. No. 1 at 33–34). Plaintiffs claim for disgorgement as an independent cause of action is properly dismissed for failure to state a claim because it is not a recognized claim. Plaintiffs argue that at least one North Carolina court has allowed a claim for disgorgement to survive a motion to dismiss. (Doc. No. 18 at 4). *See Glob. Textile Alliance, Inc.*, 2018 WL 6272929, at *13. But, even in that case the Business Court notes that disgorgement is a remedy and not a cause of action, and the court appears to have allowed the claim to proceed because the defendant sufficiently pled that he would be entitled to disgorgement as a remedy for his other claims but included disgorgement in his pleadings as a cause of action rather than as a remedy. *See id.* Thus, Plaintiffs urging that the Court recognize disgorgement as a cause of action fails. However, nothing in this order prevents Plaintiffs from seeking disgorgement as a remedy for the claims which Plaintiffs have successfully pled, as they have requested disgorgement as a remedy in their prayer for relief. Defendant's motion to dismiss Plaintiffs' claim for disgorgement as a separate cause of action is therefore granted.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 16) is **DENIED IN PART** and **GRANTED IN PART**, that is:

1. **DENIED** as to **Count 15** for Unjust Enrichment, and
2. **GRANTED** as to **Count 16** for Disgorgement.

Signed: September 28, 2023

Robert J. Conrad, Jr.
United States District Judge